**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **CATFISH FARMERS OF AMERICA,** *et al.*,<br><br>                    **Plaintiffs,**<br>       **v.**<br><br>**UNITED STATES,**<br><br><br>                 **Defendant.** | Before: Hon. _____,<br>      **Judge**<br><br>**Court No. 25-00156** |

## COMPLAINT

Plaintiffs Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA"), by and through their attorneys, allege and state as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

CFA brings this Complaint to contest aspects of the Final Results issued by the U.S. Department of Commerce ("Commerce") in the 2022-2023 administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam. The Final Results were issued on June 12, 2025 and were published in the *Federal Register* on June 18, 2025. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,004 (Dep't Commerce June 18, 2025) (final results and partial rescission of admin. rev.; 2022-2023) ("Final Results") and accompanying Issues and Decision Memorandum ("Final Decision Memo").

Court No. 25-00156

## JURISDICTION

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

2.      CFA is a trade association, a majority of whose members manufacture or process the domestic like product, as well as individual domestic producers and processors of the domestic like product. Accordingly, CFA is an interested party within the meaning of 19 U.S.C. § 1677(9)(C) and (G). CFA was also a party to the administrative review in connection with which this matter arises, and actively participated in the review. Accordingly, CFA has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

3.      CFA commenced this action by filing a Summons on July 18, 2025, within 30 days after the publication of the Final Results in the *Federal Register*. Summons (July 18, 2025), ECF No. 1. CFA is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

4.      On October 18, 2023, Commerce initiated the administrative review subject to this Complaint, covering imports of subject merchandise into the United States for the period of review of August 1, 2022 to July 31, 2023. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71,829, 71,832-35 (Dep't Commerce Oct. 18, 2023). Commerce selected Bien Dong Seafood Co., Ltd. ("Bien Dong") and Vinh Hoan Corporation

Court No. 25-00156

("Vinh Hoan"), respectively, as mandatory respondents for individual examination. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. 76,081 (Dep't Commerce Sept. 17, 2024) (prelim. results of antidumping duty admin. rev., prelim. deter. of no shipments, and rescission, in part; 2022-2023) ("Preliminary Results") and accompanying Preliminary Decision Memorandum ("Preliminary Decision Memo"). There were six other companies that Commerce did not individually examine in this review: Can Tho Import Export Seafood Joint Stock Company ("CASEAMEX"), Dai Thanh Seafoods, Dong A Seafood One Member Company Limited, HungCa 6 Corporation, Nam Viet Corporation, and NTSF Seafoods Joint Stock Company. *Id.* Commerce published the *Preliminary Results* on September 17, 2024. *See id.*

5.    In its *Preliminary Results*, Commerce's calculations produced antidumping margins of $0.00 per kilogram ("kg") for mandatory respondents Bien Dong and Vinh Hoan. Preliminary Results at 76,083. Commerce also determined that the six companies not individually examined demonstrated, through a short questionnaire, *de jure* and *de facto* absence of government control over their operations (called "separate rate" companies). Because Commerce's calculations produced margins of $0.00/kg for the mandatory respondents, the agency looked to the statute to determine rates for the non-examined separate rate respondents. *Id.* at 12.

6.    In its case brief, CFA argued that, for the final results, Commerce should base the antidumping margins for the six separate rate companies on the $0.18/kg margin assigned to the separate rate companies in the prior administrative review. The $0.18/kg margin was the average of the mandatory respondents' rates in that prior review, and one of those mandatory respondents (CASEAMEX) became a separate rate respondent in the instant review. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Case Brief* (Feb. 14, 2025) at 3. In support, CFA explained that the statute at 19 U.S.C.

Court No. 25-00156

§ 1673d(5)(A) generally prohibits using zero margins for the separate rate (referred to as the "all others" rate). *Id.* at 4. In fact, zeros are only permitted if other options for determining the separate rate are unreasonable. 19 U.S.C. § 1673d(5)(B). The Statement of Administrative Action reiterates the statute's prohibition on basing the separate rate on zero margins calculated for mandatory respondents, and narrowly permits the use of zero margins as a separate rate when *weight-averaged* with a "facts available" rate. Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) ("SAA"), at 873.

7.      Here, the record demonstrates that Commerce's decision to impute the mandatory respondents' zero margin to the separate rate respondents was not justified and was unreasonable under the statute. The record demonstrates that the separate rate companies' operations were different from the mandatory respondents' operations, which were far larger in scope of activities, vertically and horizontally integrated, and had significantly different financial structures than the separate rate respondents. *Id.* at 5-6; at 9-11. *See id.* at 13. Therefore, Commerce unreasonably assumed, without any factual basis, that that separate rate respondents warranted a $0.00/kg margin.  There is no evidence to support the inference that the separate rate respondents were not dumping.

8.      Prior to the Final Results, the review was rescinded as to one mandatory respondent, Vinh Hoan, as a result of a World Trade Organization settlement. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 90 Fed. Reg. 9,315 (Dep't Commerce Feb. 11, 2025) (notice of partial rescission; 2022-2023); *see also Certain frozen Fish Fillets from the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,120 (Dep't Commerce Jan. 24, 2025) (notice of partial revocation of the antidumping duty order). This left one mandatory respondent, Bien Dong, to which Commerce assigned a final dumping margin of $0.00/kg .

**Court No. 25-00156**

9.      In the *Final Results*, Commerce recognized that the SAA "provides that, if the expected method is 'not feasible' or 'results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers,' Commerce may use 'other reasonable methods' to calculate the non-investigated exporters' or producers' rate." Final Decision Memorandum at 12. Yet, Commerce declined to use another reasonable method. Commerce ignored the fact that the statute generally prohibits use of a zero margin as a separate rate, and Commerce ignored the fact that the record lacked evidence to justify a zero margin as the separate rate this case. *Id.* at 13.  Commerce's use of a $0.18/kg margin as a separate rate would have been a more reasonable choice, as it was consistent with the record, the law, and with prior agency practice. *Id.*

## CLAIMS AND BASES FOR RELIEF

### Count I

10.      CFA hereby realleges and incorporates by reference paragraphs 1 through 8.

11.      Commerce's decision to infer that the non-examined companies were not dumping and therefore warranted a $0.00/kg margin was inconsistent with the statute and the SAA, and is otherwise contrary to law.

### Count II

12.      CFA hereby realleges and incorporates by reference paragraphs 1 through 10

13.      Commerce's decision to infer that the non-examined companies were not dumping and therefore warranted a $0.00/kg margin is not supported by substantial evidence.

**Court No. 25-00156**

<u>**REQUEST FOR JUDGMENT AND RELIEF**</u>

For the reasons stated in this Complaint, CFA respectfully requests that the Court:

(1)    Hold that Commerce's Final Results in the 2022-2023 antidumping duty administrative review of *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam* are not supported by substantial evidence on the record, are inadequately explained, and are otherwise not in accordance with law; and

(2)    Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Nazak Nikakhtar*
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for CFA*

</div>

Dated: August 15, 2025