**PUBLIC VERSION**

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| CATFISH FARMERS OF AMERICA, *et al.*, ) | |
| ) | **PUBLIC VERSION** |
| Plaintiffs, ) | |
| ) | |
| v. ) | Court No. 25-00156 |
| ) | |
| UNITED STATES, ) | Business Proprietary |
| ) | Information Omitted on Pages |
| Defendant, ) | 12, 17-19 |
| ) | |
| and ) | |
| ) | |
| CAN THO IMPORT EXPORT SEAFOOD ) | |
| JOINT STOCK COMPANY, ) | |
| ) | |
| Defendant-Intervenor, ) | |
| ) | |
| and ) | |
| ) | |
| NTSF SEAFOODS JOINT STOCK COMPANY, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

<table>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA MCCARTHY<br>Director</td></tr>
<tr><td></td><td>REGINALD T. BLADES, JR.<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:<br>K. GARRETT KAYS<br>Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel for Trade<br>  Enforcement and Compliance</td><td>COLLIN T. MATHIAS<br>Trial Attorney<br>United States Department of Justice<br>Civil Division<br>Commercial Litigation Branch</td></tr>
</table>

1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-0018
Email: Kenneth.Kays@trade.gov


April 3, 2026

P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov


Attorneys for Defendant

PUBLIC VERSION

**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| CATFISH FARMERS OF AMERICA, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>CAN THO IMPORT EXPORT SEAFOOD<br>JOINT STOCK COMPANY, )<br><br>Defendant-Intervenor, )<br><br>and )<br><br>NTSF SEAFOODS JOINT STOCK COMPANY, )<br><br>Defendant-Intervenor. ) | Court No. 25-00156 |

**ORDER**

Upon consideration of the plaintiffs' Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiffs' Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____                     _____ _____ _____
           New York, New York                                              JUDGE

## TABLE OF CONTENTS

**PAGE**

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD .......................................................................................... 1

STATEMENT PURSUANT TO RULE 56.2 ....................................................................... 2

    I.    Administrative Determination Under Review ........................................................ 2

    II.    Issue Presented For Review

STATEMENT OF FACTS .................................................................................................. 2

    I.    Statutory Background ........................................................................................... 2

    II.    Procedural Background ......................................................................................... 4

SUMMARY OF THE ARGUMENT ................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    Standard of Review .............................................................................................. 8

    II.    Commerce's Rate Selection for Non-Individually Examined, Separate Rate Companies Is Supported by Substantial Evidence and in Accordance with Law ... 9

        A.  Commerce's Method for Selecting the Separate Rate for Non-Examined Companies Is a Lawful Exercise of Any Reasonable Method .......................... 9

        B.  Commerce Reasonably Declined to Assign the Separate Rate Respondents a Non-Contemporaneous Rate Because No Record Evidence Supports CFA's Request ........................................................................................................ 14

            1.  CFA Fails to Demonstrate that Bien Dong Is Not Representative of the Separate Rate Respondents .......................................................................... 15

            2.  Commerce Reasonably Found that Record Evidence Does Not Support "Pulling Forward" a Non-Contemporaneous Rate ................................... 20

CONCLUSION ................................................................................................................. 24

**PUBLIC VERSION**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albemarle Corp. & Subsidiaries v. United States.*,
  821 F.3d 1345 (Fed. Cir. 2016) ................................................................ passim

*Bosun Tools Co. v. United States*,
  2022 U.S. App. LEXIS 624 ................................................................................ 22

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
  419 U.S. 281 (1974) .......................................................................................... 10

*Ceramica Regiomontana, S.A. v. United States*,
  810 F.2d 1137 (Fed. Cir. 1987) ........................................................................ 10

*Changzhou Hawd Flooring Co. v. United States*,
  848 F.3d 1006 (Fed. Cir. 2017) ............................................................. 13, 16, 20

*Cleo Inc. v. United States*,
  501 F.3d 1291 (Fed. Cir. 2007) .......................................................................... 8

*CME Acquisitions v. United States*,
  793 F. Supp. 3d 1375 (Ct. Int'l Trade 2025) .................................................... 21

*Cooper Kushan Tire Co. v. United States*,
  539 F. Supp. 3d 13168 (Ct. Int'l Trade 2021 ..................................................... 9

*Downhole Pipe & Equip., L.P. v. United States*,
  776 F.3d 1369 (Fed. Cir. 2015) ........................................................................ 19

*Green Farms Seafood Joint Stock Co. v. United States*,
  No. 22-00092, 2025 WL 1905115 (Ct. Int'l Trade July 10, 2025) .................. 19, 20

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*,
  322 F. Supp. 3d 1308 (Ct. Int'l Trade 2018) .................................................... 13

*National Knitwear & Sportswear Ass'n v. United States*,
  779 F. Supp. 1364 (Ct. Int'l Trade 1991) ........................................................... 3

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) .......................................................................... 8

*PrimeSource Bldg. Prods. v. United States*,
  111 F.4th 1320 (Fed. Cir. 2024) ................................................................. passim

*PrimeSource Bldg. Prods. v. United States*,
  581 F. Supp. 3d 1331 (Ct. Int'l Trade 2022) .................................................... 11

*Pro-Team Coil Nail Enter. Inc. v. United States*,
 587 F. Supp. 3d 1364 (Ct. Int'l Trade 2022) ................................................................. 16

*Shandong Huarong Mach. Co. v. United States*,
 29 CIT 484 (2005) ........................................................................................................ 21

*Shanxi Hairui Trade Co. v. United States*,
 39 F.4th 1357 (Fed. Cir. 2022) ................................................................................. 16, 17

*Timken Co. v. United States*,
 788 F. Supp. 1216 (Ct. Int'l Trade 1992) ................................................................ 14, 15

*United States v. Eurodif S.A.*,
 555 U.S. 305 (2009) ........................................................................................................ 8

*Wheatland Tube Co. v. United States*,
 161 F.3d 1365 (Fed. Cir. 1998) ..................................................................................... 10

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
 716 F.3d 1370 (Fed. Cir. 2013) ....................................................................................... 3

*YC Rubber Co. (N. Am.) LLC v. United States*, Court,
 No. 2021-1489, 2022 U.S. App. LEXIS 24259 (Fed. Cir. 2022) ................................. 12

**Statutes**

19 U.S.C. § 1673(c)(5)(B) ................................................................................................. 4

19 U.S.C. § 1673d(c)(5) ......................................................................................... 3, 4, 6, 11

19 U.S.C. § 1677f-1(c) ............................................................................................. 3, 16, 20

19 U.S.C. § 3512(d) ........................................................................................................... 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| CATFISH FARMERS OF AMERICA, *et al.*, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>CAN THO IMPORT EXPORT SEAFOOD<br>JOINT STOCK COMPANY, )<br><br>Defendant-Intervenor, )<br><br>and )<br><br>NTSF SEAFOODS JOINT STOCK COMPANY, )<br><br>Defendant-Intervenor. ) | **PUBLIC VERSION**<br><br>Court No. 25-00156<br><br>Business Proprietary<br>Information Omitted on Pages<br>12, 17-19 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, CFA), ECF Nos. 36, 37 (CFA Br.).  CFA challenges the Department

of Commerce's (Commerce) selection of the separate rate for non-examined companies in the 2022-23 administrative review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam (Vietnam). *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,004 (Dep't Commerce June 18, 2025) (final results and partial rescission). Commerce's determination is supported by substantial evidence and in accordance with law. Accordingly, we respectfully request that the Court deny CFA's motion, sustain Commerce's final results, and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

### I.    Administrative Determination Under Review

The administrative determination under review is *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,004 (Dep't Commerce June 18, 2025) (final admin. results and partial rescission) (*Final Results*) (P.R. 490), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 488). The period of review is August 1, 2022, through July 31, 2023. *Id.*

### II.    Issue Presented for Review

Whether Commerce's selection of the separate rate for the non-examined companies is supported by substantial evidence and is in accordance with law.

## STATEMENT OF FACTS

### I.    Statutory Background

In proceedings involving non-market economies, including Vietnam, Commerce presumes exporters are state-controlled, and assigns them a single statewide dumping rate. *Albemarle Corp. & Subsidiaries v. United States.,* 821 F.3d 1345, 1348 (Fed. Cir. 2016).

However, exporters who demonstrate sufficient independence from state control may apply for a different rate to be granted a separate rate. *Id.*

The antidumping statute and Commerce's regulations do not address the establishment of a rate to apply to exporters not selected for individual examination when Commerce limits its examination in an administrative review pursuant to 19 U.S.C. § 1677f-1(c)(2). However, Commerce looks to 19 U.S.C. § 1673d(c)(5), which provides the method for determining the estimated all-others rate in an investigation. *See Albemarle,* 821 F.3d at 1351-53 (applying 19 U.S.C. § 1673d(c)(5) in the administrative review context).

Although the statute directs Commerce to determine individual rates for each known exporter of the foreign merchandise, when it is not practicable to do so because of the large number of exporters involved in the review, the statute also permits Commerce to limit its examination to a "reasonable number" of exporters, called mandatory respondents. 19 U.S.C. § 1677f-1(c)(1)-(2). Commerce typically chooses mandatory respondents who are the largest exporters by volume because Commerce presumes that they are representative of all exporters and producers. *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1372 (Fed. Cir. 2013); *see also National Knitwear & Sportswear Ass'n v. United States*, 779 F. Supp. 1364, 1374 (Ct. Int'l Trade 1991) ("Where the Department does use sampling or averaging, 'such samples and averages shall be representative of the transactions under investigation.'") (quoting 19 U.S.C. § 1677f-1(b)). For non-mandatory respondents in non-market cases, Commerce calculates a separate rate for those companies who establish eligibility for such a separate rate. *See* 19 U.S.C. § 1673d(c)(1)(B)(i).

Pursuant to subsection 1673d(c)(5)(A), Commerce calculates separate rates by taking a weighted average of the dumping margins for the individually examined respondents, excluding

**PUBLIC VERSION**

any margins that are zero, *de minimis*, or determined entirely based on the facts available. *Id.* § 1673d(c)(5)(A). However, when dumping margins for all individually examined companies are zero, *de minimis* or determined based entirely on facts available, Commerce "may use any reasonable method to establish the estimated all-others rate . . . , including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." 19 U.S.C. § 1673(c)(5)(B).

The Statement of Administrative Action (SAA) provides that in such situations the expected method is to weight-average the zero and *de minimis* margins and the margins determined pursuant to the facts available, provided volume data is available, unless doing so is not feasible or would not be reasonably reflective of potential dumping margins. *See Statement of Administrative Action accompanying the Uruguay Round Agreements* Act, H.R. Rep. No. 103-316, Vol. 1 (1994) (SAA), at 873.[1]

## II.    Procedural Background

Since August 2003, Commerce has been administering an antidumping order covering certain frozen fish fillets from Vietnam. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Dep't of Commerce August 12, 2003) (Order). On October 18, 2023, Commerce initiated the administrative review with respect to 151 exporters, *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71,829, 71,832-71,835 (Dep't Commerce Oct. 18, 2023) (P.R. 34) (*Initiation Notice*), and later selected

---

[1] The SAA is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and {the Uruguay Round Agreements Act} in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Bien Dong Seafood Co., Ltd. ("Bien Dong")[2] and Vinh Hoan Corporation ("Vinh Hoan")[3] as mandatory respondents. *See* Commerce's Respondent Selection Memorandum (March 21, 2024) (P.R. 170, C.R. 92); *see also* Commerce's Second Respondent Selection Memorandum (April 30, 2024) (P.R. 190). From March to August 2024, Vinh Hoan and Bien Dong participated in the review, responding to initial and supplemental questionnaires.

On September 17, 2024, Commerce released its preliminary results. *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam,* 89 Fed. Reg. 76,081 (Dep't of Commerce September 17, 2024) (prelim. results and rescission) (P.R. 398) (*Preliminary Results*), and accompanying preliminary decision memorandum (PDM) (P.R. 399). Commerce preliminarily calculated a weighted-average dumping margin of $0.00 per kilogram for both Bien Dong and Vinh Hoan. *Preliminary Results*, 89 Fed. Reg. at 76,083. Commerce also determined that six companies under the review were eligible for separate rates, specifically Can Tho Import Export Seafood Joint Stock Company (CASEAMEX), Dai Thanh Seafoods Company Limited (Dai Thanh), Dong A Seafood One Member Company Limited (DongA), HungCa 6 Corporation (HungCa 6), Nam Viet Corporation (Navico), and NTSF Seafoods Joint Stock Company. *See id.*

---

[2] Commerce found that Bien Dong Seafood Joint Stock Company and two affiliated companies, Bien Dong Hau Giang Seafood Joint Stock Company and Seavina Joint Stock Company, are a single entity. *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam,* 89 Fed. Reg. 76,081, n. 3 (Dep't of Commerce September 17, 2024) (prelim. results and rescission) (P.R. 398) (citing Commerce's Memorandum, Single-Entity Analysis for Bien Dong Seafood Company, Ltd. and Affiliated Companies (September 6, 2024) (P.R. 405, C.R. 427)); *see also Final Results*, 90 Fed. Reg. at 26,005, n.10.

[3] Commerce treats Vinh Hoan as a single entity comprising (1) Vinh Hoan Corporation, (2) Van Duc Food Export Joint Stock Company (also known as Van Duc), (3) Van Duc Tien Giang Food Export Company (also known as VDTG or Van Duc Tien Giang Food Exp. Co.), (4) Thanh Binh Dong Thap One Member Company Limited (also known as Thanh Binh Dong Thap or Thanh Binh Dong Thap Ltd.), and (5) Vinh Phuoc Food Company Limited (also known as Vinh Phuoc or VP Food). *See Initiation Notice*, 88 Fed. Reg. at 71,835, n. 11.

To select a separate rate for the six companies not selected for individual review, consistent with the statute and the SAA, Commerce preliminarily found that a reasonable method, under 19 U.S.C. § 1673d(c)(5)(B), is to assign the zero percent dumping margin calculated for the mandatory respondents. *Id.* Accordingly, Commerce assigned non-individually examined, separate rate exporters a dumping margin equal to Bien Dong and Vinh Hoan's dumping margin ($0.00/kg), consistent with Commerce's practice and section 19 U.S.C. § 1673d(c)(5)(A). *Id.* (citing Preliminary Results Analysis Memorandum for the Vinh Hoan Corporation (Sept. 17, 2024) (P.R. 414, C.R 434); and Preliminary Results Analysis Memorandum for Bien Dong Seafood Joint Stock Company (Sept. 26, 2024) (P.R. 402, C.R. 428).

On January 17, 2025, the United States and the Government of Vietnam signed an agreement regarding the World Trade Organization (WTO) dispute *United States—Anti-Dumping Measures on Fish Fillets from Viet Nam* (DS536). *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,120 (Dep't of Commerce Jan. 24, 2025) (partial revocation AD Order). In light of this agreement, Commerce issued a notice of partial revocation of Vinh Hoan from the Order. *Id.* Thus, as a result of this partial revocation, Commerce rescinded the review with respect to entries that were produced and exported by Vinh Hoan during the 2022 – 2023 period of review. *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam Administrative Review*, 90 Fed. Reg. 9,315 (Dep't of Commerce Feb. 11, 2025) (notice of partial recission).

In February 2025, CFA submitted its case brief arguing that Commerce incorrectly assigned a separate rate of $0.00/kg to the separate rate respondents because their activities and operations were significantly different from the mandatory respondents. CFA Case Brief (Feb.

18, 2025) (P.R. 468, C.R. 472). CFA asserted that the mandatory respondents' operations differed from those of the separate rate companies, such that the operational, cost structure, and sales channel differences result in different pricing behaviors between the mandatory respondents and the separate rate respondents. *Id.* at 5-11. CFA also argued that in prior administrative reviews, the separate rates had not been zero or *de minimis*, thus demonstrating that the mandatory respondents' zero margin is not reflective of the separate rate companies' pricing behavior and potential dumping during the POR. *Id.* at 11-14. Finally, CFA argued that because the record demonstrates that the mandatory respondents' preliminary margin of $0.00/kg does not reasonably reflect the dumping of the separate rate respondents, Commerce should pull forward the $0.18/kg separate rate from the prior administrative review. *Id.* at 14-18.

In the *Final Results*, Commerce explains that it disagrees with CFA's arguments and continues to assign a rate to the separate rate companies based on the contemporaneous experience of the mandatory respondent Bien Dong. *See* IDM at 11-16. Additionally, Commerce explains that no party offered comments on the accuracy of Bien Dong's calculated margin, and that the record does not contain substantial evidence to rebut the presumption of Bien Dong's representativeness or any other information that would justify pulling forward a rate from a prior review. IDM at 13-15. Thus, Commerce continues to assign the separate rate companies the dumping margin calculated for the mandatory respondent Bien Dong in the current review, consistent with Commerce's practice. *Id.* This appeal ensued.

## SUMMARY OF ARGUMENT

Commerce's decision to assign Bien Dong's rate to separate rate companies is lawful and supported by substantial evidence. In *Albemarle*, the Federal Circuit held that the rates for mandatory respondents should be considered representative unless substantial evidence

demonstrates otherwise.  CFA identifies no record evidence that demonstrates that Bien Dong's behavior is not representative of the separate rate companies.  Moreover, CFA supported Bien Dong's selection as a mandatory respondent.  Instead, CFA merely relies on the history of the order to escape the presumed representativeness.  But there is no basis to assume that dumping margins or underlying facts remain the same from review to review.  Thus, Commerce reasonably rejected CFA's arguments and found that Bien Dong's rate is the best record evidence for the rates for separate rate companies.  Commerce reasonably concluded that other rates pressed by CFA were not the most accurate reflection of the dumping margins for non-examined, separate rate companies.  Thus, Commerce's separate rate selection is supported by substantial evidence and in accordance with law.

## ARGUMENT

### I.    Standard of Review

In § 1516a(a)(2) actions, "{t}he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).  Commerce's decision may not be overturned "simply because the reviewing court would have reached a different conclusion based on the same record."  *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).  Commerce's factual findings "are conclusive unless unsupported by substantial evidence."  *United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) (citation omitted)).

8

PUBLIC VERSION

## II.      Commerce's Rate Selection for Non-Individually Examined, Separate Rate Companies Is Supported by Substantial Evidence and in Accordance with Law

Commerce lawfully selected a reasonable method to determine the antidumping rate for the separate rate companies by relying on the representativeness of the mandatory respondent. CFA's arguments to the contrary, that Commerce unlawfully applied the expected method and that the record does not support the separate rate, are meritless.

As an initial matter, no party is challenging Commerce's decision to proceed with a single mandatory respondent.  Therefore, any legal challenge to that decision is not before the Court and is waived.  *See Cooper Kushan Tire Co. v. United States*, 539 F. Supp. 3d 1316, 1337-38 (Ct. Int'l Trade 2021).  The only issue before the Court is whether Commerce's selection of a zero percent rate for the non-examined separate rate respondents is supported by substantial evidence and in accordance with law.

### A.      Commerce's Method for Selecting the Separate Rate for Non-Examined Companies Is a Lawful Exercise of Any Reasonable Method

CFA challenges Commerce's selection of the separate rate, arguing that Commerce legally erred by applying the expected method because it requires more than one rate for individually examined companies to calculate a "weighted average."  CFA Br. at 9-11. Additionally, CFA asserts that Commerce erred by requiring CFA to meet the burden of proof to demonstrate why pulling forward a past rate would reasonably reflect dumping margins.  *Id.* at 11.  Finally, CFA argues that, to the extent Commerce applied the expected method using two zero values, the SAA forecloses such analysis.  *Id.* at 11-12.  CFA is wrong.

Commerce did not apply the expected method to select the separate rate for the non-examined companies.  Instead, Commerce applied "any reasonable method," as contemplated by section 1673d(c)(5)(B), by assigning Bien Dong's rate to the non-selected companies.  We

9

PUBLIC VERSION

acknowledge that Commerce's IDM contains imprecise language to the extent it implies that Commerce intended to apply the expected method to determine the non-selected rate. *See, e.g., IDM* at 13 (finding the record did not contain evidence "justifying a deviation from the expected method."). Commerce, however, did not average any rates to determine the rate applied to non-selected respondents because there is only one rate: Bien Dong's. Thus, in the absence of any record evidence to the contrary, Commerce considered Bien Dong's experience to be representative and assigned Bien Dong's calculated zero rate to the non-selected companies. *See Final Results*, 90 Fed. Reg. at 26,005.

Although the IDM could have contained more precise language as to Commerce's methodology, Commerce's separate rate selection is reasonably discernible. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) ("An explicit explanation is not necessary, however, where the agency's decisional path is reasonably discernible."); *see also Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987) ("A court may 'uphold {an agency's} decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). In both the Federal Register notice and the IDM, Commerce explains that it is assigning Bien Dong's rate to the separate rate, non-examined companies. *See, e.g., Final Results*, 90 Fed. Reg. at 26,005 ("This {separate} rate {for the non-examined companies} is based on the rate calculated for Bien Dong Seafood Co. Ltd."); IDM at 16 ("As a result, for the final results, the dumping margin assigned to the non-selected companies is based on Bien Dong's margin."). Nowhere did Commerce explicitly state it was applying a weighted average to determine the non-selected separate rate.

10

"{T}he expected method is the default method," *PrimeSource Bldg. Prods. v. United States*, 111 F.4th 1320, 1330 (Fed. Cir. 2024) (quoting *PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d 1331, 1338 (Ct. Int'l Trade 2022)).  However, Commerce may use "any reasonable method," *see* 19 U.S.C. § 1673d(c)(5), "if Commerce reasonably concludes that the expected method is 'not feasible' or 'would not be reasonably reflective of potential dumping margins.'" *Albemarle*, 821 F.3d at 1352.  The expected method was not feasible in this case.

Commerce's rationale for deviating from the expected method is reasonably discernable.  As the SAA describes, the expected method is to average the mandatory respondents' margins.  *See* SAA at 873.  The expected method is not feasible when Commerce reviews a single mandatory respondent.  *See* IDM at 13.  Further, Commerce's use of Bien Dong's rate as the non-selected separate rate is permissible pursuant to 19 U.S.C. § 1673d(c)(5)(B).  As the Federal Circuit has explained, "{w}hen all mandatory respondents receive a rate that is zero, *de minimis*, or based entirely on AFA rates, Commerce's statutory obligation is to select '*any* reasonable method'…" *See PrimeSource*, 111 F.4th at 1335 (citing 19 U.S.C. § 1673d(c)(5)(B) (emphasis added)).  In this case, the only mandatory respondent, Bien Dong, had a calculated rate of zero.  Accordingly, Commerce reasonably determined to assign that zero rate as the separate rate for the non-examined companies.  *See* IDM at 13.

"The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters." *Albemarle*, 821 F.3d at 1353.  Vinh Hoan and Bien Dong, the individually examined respondents selected at the beginning of the review period, account for a majority of the market during the

11

relevant period and are representative in terms of aggregate volume.[4]  *Albemarle*, 821 F.3d at 1353; IDM at 13-14.  In the *Preliminary Results*, Commerce calculated a $0.0/kg rate for both Vinh Hoan and Bien Dong.  89 Fed. Reg. at 76,083.  After the *Preliminary Result,* review of Vinh Hoan was rescinded due to unique circumstances when an international settlement agreement excluded Vinh Hoan from the order.  *See* IDM at 8.[5]

With respect to the companies subject to the review by the *Final Results,* Bien Dong accounts for the highest volume of the sales under examination.  *See* Respondent Selection Memorandum at 8.  Specifically, Bien Dong accounts for [                    ] of the entries subject to review, or [              ] of sales.  *See* Respondent Selection Memorandum at 8.  The company with the next largest volume of exports had only [                 ] of imports, with substantially smaller amounts for the remaining five exporters who had entries subject to this review.  *Id.* Thus, Bien Dong accounts for [                         ] of the sales remaining under review (after the review was rescinded with respect to the other mandatory respondent, which also received a preliminary margin of $0.00/kg), and it was reasonable for Commerce to find that Bien Dong's margin is representative of the separate rate, non-examined companies.

That is fully consistent with the yardstick of representativeness by the mandatory respondents of the non-examined companies, contemplated by the statutory framework and

---

[4]  During this period of review, Vinh Hoan and Bien Dong accounted for [          ] and [          ] of the total exports subject to this review, respectively, at the time of the *Preliminary Results*.  *See* Respondent Selection Memorandum at 8.

[5]  CFA cites the Federal Circuit's decision in *YC Rubber Co. (N. Am.) LLC v. United States*, Court No. 2021-1489, 2022 U.S. App. LEXIS 24259, *11 (Fed. Cir. 2022) to support its argument that the expected method cannot be used when there is one mandatory respondent in a review.  CFA Br. at 10.  CFA did not argue in the underlying administrative proceedings, and similarly does not allege before this court, that Commerce should have selected an additional mandatory respondent after the review was rescinded for Vien Hoan.  The only issue CFA challenges is the rate Commerce selected for the separate rate companies.

confirmed by the Federal Circuit. *See Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017) (citing *Albemarle*, 821 F.3d at 1353). Importantly, CFA did not challenge Commerce's respondent selection in this proceeding, indeed supporting the selection of Bien Dong as a respondent, and thus its arguments are misplaced. *See* CFA Comments on CBP Data (Oct. 31, 2023) (P.R. 45, C.R. 6) at 2-3. Because Bien Dong is one of the 'exporters and producers accounting for the largest volume of the subject merchandise from the exporting country,' *see* 19 U.S.C. § 1677f-1(c)(2)(B), its pricing practices are presumptively representative of the other exporters and producers of subject merchandise. *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) ("Because Senmao was one of the 'exporters and producers accounting for the largest volume of the subject merchandise from the exporting country,' its pricing practices are presumptively representative of the other exporters and producers of subject merchandise.") (citing 19 U.S.C. § 1677f-1(c)(2)(B)).

Therefore, CFA's assertion that the SAA forecloses the use of the expected method when both mandatory respondents have identical, zero rates is moot. *See* CFA Br. at 11-12. Commerce relied on Bien Dong's zero rate alone to select the separate rate for the non-examined companies. *Final Results*, 90 Fed. Reg. at 26,005 ("This {separate} rate {for the non-examined companies} is based on the rate calculated for Bien Dong Seafood Co. Ltd."). Therefore, Commerce did not rely on the expected method, and CFA's argument is not applicable. [6]

---

[6] Even if the Court reviewed CFA's assertion, in *PrimeSource*, the Federal Circuit sustained Commerce's averaging of two identical rates based on adverse facts available. *See PrimeSource*, 111 F.4th at 1326.

**PUBLIC VERSION**

Thus, Commerce's determination to assign Bien Dong's individually calculated rate of zero to the non-examined separate rate companies is based on substantial evidence and in accordance with law.

**B.      Commerce Reasonably Declined to Assign the Separate Rate Respondents a Non-Contemporaneous Rate Because No Record Evidence Supports CFA's Request**

No party has raised *any* argument to undermine Commerce's calculated rate for mandatory respondent Bien Dong.  The only issue before Commerce is what the separate rate for non-examined respondents should be.  *See* IDM at 14-16.  Commerce, relying on the presumptive representativeness of the mandatory respondent, chose to apply Bien Dong's rate as the separate rate.  *See* IDM at 13.  CFA disagrees, asserting that Commerce should have deviated further and pulled forward a non-contemporaneous $0.18/kg rate from a prior review.  *See* CFA Br. at 13-21.  CFA, however, identifies no record evidence to support its claims.  Thus, Commerce's reasonable reliance on this presumption of representativeness is supported by substantial evidence and in accordance with law.  *See Timken Co. v. United States*, 788 F. Supp. 1216, 1220 (Ct. Int'l Trade 1992) ("When Commerce is faced with the decision to choose between two alternatives and one alternative is favored over the other in [its] eyes, then [it has] the discretion to choose accordingly if [its] selection is reasonable.").

CFA, relying on a patchwork of allegations, argues that Bien Dong's rate is not representative of the separate rate companies.  *See* CFA Br. at 12-17.  However, Commerce analyzed the arguments made by CFA, and Commerce explains that the record of this review does not provide a basis to overcome the presumption that the dumping margins calculated for the mandatory respondent are representative for purposes of assigning a dumping margin to the separate rate companies not selected for individual examination in this segment.  IDM at 16.

14

Specifically, Commerce explains that CFA's inconsistent references to evidence about the non-examined companies does not warrant the application of a non-contemporaneous rate. *Id.* Because no record evidence supports the use of a rate from a past review, the Court should not adopt CFA's argument.

    **1.   CFA Fails to Demonstrate that Bien Dong Is Not Representative of the Separate Rate Respondents**

CFA points to differences in the export prices between Bien Dong and the non-examined companies, claiming that it is "plain" that the separate rate respondents' U.S. prices were lower than that of Bien Dong. CFA Br. at 14. Additionally, CFA asserts that the separate rate respondents are smaller exporters, relative to Bien Dong, and that their small market size creates an incentive for them to dump into the U.S. market. CFA Br. at 15. However, Commerce directly considered these arguments and reasonably rejected them. IDM at 13-15.

As Commerce explains, CFA does not provide evidence of dumping by the separate rate respondents. IDM at 14. As CFA concedes, it is "impossible" to determine whether dumping occurs without information regarding normal value. CFA Br. at 16; IDM at 14. CFA acknowledges that Commerce does not request normal value information, as a matter of course, from non-examined companies. CFA Br. at 16; IDM at 14. At the same time, CFA critiques Commerce's analysis of such evidentiary shortcomings as "arbitrary and unsupported," and criticizes Commerce for not requesting further information from the non-selected companies. CFA Br. at 16-17. CFA's argument is contradicted by the statutory framework for rate-selection of non-examined companies.

"Commerce is not otherwise required to collect information about the non-selected respondents because Commerce is permitted, in fact, expected, to treat the mandatory respondents as representative of the non-selected respondents when it determines the non-

PUBLIC VERSION

selected respondents' rate." *Pro-Team Coil Nail Enter. Inc. v. United States*, 587 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2022) ("Having determined to examine the largest exporters by volume in this review, the statute permits Commerce to proceed with the review without requiring additional information from the non-selected respondents.") (citing *Changzhou Hawd*, 848 F.3d at 1012).  More saliently, this Court has explained that data collection for the purposes of analyzing "potential dumping margins" for non-examined, separate rate exporters is inconsistent with the language of 19 U.S.C. § 1677f-1(c) when Commerce limits its examination to the largest exporters by volume.  *Id.* at 1372.[7]  Thus, CFA's critique of Commerce's explanation of the evidentiary shortcomings to analyze dumping is not "arbitrary",[8] but is explicitly contemplated by the statute.

CFA's reliance on *Shanxi Hairui Trade Co. v. United States,* for the notion that small exporters may lower their prices, is similarly unconvincing.  CFA Br. at 15 (citing 39 F.4th 1357, 1362 (Fed. Cir. 2022)).  *Shanxi Hairui Trade Co.* discusses the statutory basis for sampling in respondent selection under 19 U.S.C. § 1677f-1(c)(2)(A), which was not the basis for respondent selection in this proceeding and does not provide an evidentiary basis for finding that dumping *actually* occurred by the non-examined companies or that they are distinct from Bien Dong.

---

[7]  It is not uncommon to have dozens of non-examined, separate rate companies, and this statutory scheme contemplates a methodology that relies on contemporaneous data from the largest exporters by volume to calculate such rates for non-examined companies, as opposed to conducting a company-specific margin for each separate rate company.  *See Hardwood and Decorative Plywood from the Socialist Republic of Vietnam*, 90 Fed. Reg. 10,059 (Dep't of Commerce March 2, 2026) (prelim. affirm. LTFV determ. and prelim. neg. determ. of critical circumstances and postponement of final determ. and extension of prov. measures) (Commerce granting separate rates for 50 non-examined companies).

[8]  Indeed, according to CFA's own price comparison, Commerce explains that the [                                                                                          did not exhibit evidence of dumping.  IDM at 14 (citing CFA Br. at Exhibit 1B); *see also* Respondent Selection Memorandum at 8.

16

Similarly, CFA argues that, because [

the separate rate respondents therefore

have different costs because [

]. CFA Br. at 14-15. From the outset, this argument does not

relate to two non-examined companies (Navico and NTSF Seafoods Joint Stock Company

(NTSF)). *Id.*[9] CFA is merely referencing a patchwork of evidence to indicate that *some*, not *all*,

non-examined companies *may* have different operations and costs than Bien Dong. The statute

does not indicate that separate rate assignments should be altered based on company-specific

considerations, such as cost structures or sales processes. Most important, however, the record

does not contain the cost and normal value information for non-examined companies that would

be necessary for this analysis.

Still, Commerce directly considered this argument and the relevant record. IDM at 14-

15. Commerce explains that the last instance where CASEAMEX was subject to review, it

reported sales through affiliated entities as constructed export prices. IDM at 14 n.58 (citing

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*; 2021–2022, 88 Fed. Reg.

61,525 (Dep't of Commerce September 7, 2023) (prelim. results AD admin. review, prelim.

determ. of no shipments, and notice of intent to rescind), and accompanying PDM at 18.

Additionally, Commerce explains that record evidence indicates that NTSF sold subject

merchandise [                                                        ]. IDM at 14, n.58 (citing

NTSF Separate Rate Application (Nov. 27, 203) (P.R. 77) at 4). Commerce also explains that

the record does not contain detailed information about the company operations or integration for

---

[9] In its case brief to the agency, CFA acknowledges that [
]. CFA Case Brief at 9; *see also* IDM at 14 ("information for NTSF…
indicates that the level of integration is, in fact, similar to that of the mandatory respondent.").

NAVICO and CASEAMEX in this review.  IDM at 14.  Contrary to CFA's assertion, Commerce explains that the record evidences a level of integration similar to that of Bien Dong for four non-examined respondents (NTSF, Dai Thanh, Dong A, and HungCa 6).  *Id.* (citing Dai Thanh Seafoods Separate Rate Application (November 15, 2023) (C.R. 38) at 9 (stating that Dai Thanh conducts the following as "{b}usiness functions":

]); Dong A Separate Rate Application Exhibit 9 (October 24, 2023) (C.R. 3) at 117 (stating as "{b}usiness highlights that

HungCa 6 Corporation Separate Rate Application at Exhibit 9 (October 26, 2023) (C.R. 4) at 178 (indicating expenses for [

]); *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. 18,595 (Dep't of Commerce March 14, 2024) (final results and partial recission; 2021-2022) (finding that NTSF farms and processes fish, and produces feed)).

CFA contends that Commerce failed to provide sufficient explanation about the differing operations between the companies.  CFA Br. at 17.  As explained above, such an analysis is not required under the statute to find that a mandatory respondent is representative of the non-selected companies for purposes of assigning that rate to non-examined, separate rate companies.  Nevertheless, Commerce responded to CFA's case brief and cites to the applicable record evidence that demonstrates that the separate rate respondents had similar operations as Bien Dong.  *See* IDM at 14, n.57; *see also* CFA Case Brief (February 14, 2025) (C.R. 472) at 7-9 (arguing that pulling forward of a $0.18/kg rate is necessary because Vinh Hoan and Bien Dong

18

have their own farming and processing facilities, and [

]).  CFA merely disagrees with Commerce's analysis, which does not render Commerce's findings unsupported or conclusory.  CFA's attempts to contrast the operations and levels of integration between Bien Dong and the non-examined companies are merely requests for this Court to reweigh evidence, which it cannot do. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376 (Fed. Cir. 2015).

Further, CFA argues that Commerce could have requested more information from the separate rate, non-examined companies, relying on *Green Farms Seafood*.  CFA Br. at 16. (citing *Green Farms Seafood Joint Stock Co. v. United States*, No. 22-00092, 2025 WL 1905115, at *2 (Ct. Int'l Trade July 10, 2025).  *Green Farms* is factually distinguishable.  In response to the Court's order on remand, Commerce's explains how a specific non-examined company's pricing information reflected "economic reality," when the separate rate was based on the mandatory respondent's calculated zero rate from the underlying administrative review and a calculated rate of $3.87/kg from a *prior review* in 2010-2011, though applied to the other respondent through adverse facts available.  *Green Farms Seafood Joint Stock Co.*, 2025 WL 1905115, at *2-4; *see also Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 87 Fed. Reg. 15,912 (Dep't of Commerce March 21, 2022) (final results and final determ. of no shipments; 2019-2020), and accompanying IDM at 28, fn. 179; *see also Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 78 Fed. Reg. 17,350, 17,353 (Dep't of Commerce March 21, 2013) (final results admin. review and new shipper review; 2010-2011) (where it calculated a $3.87/kg rate).  Contrary to the facts at issue in *Green Farms*, Commerce is not relying on a non-contemporaneous rate in its separate rate selection (let alone partially relying on a rate from 2010-2011).  For this review, Commerce relies on contemporaneous information in

19

generating the rate assigned the non-examined companies: the calculated margin for Bien Dong in the *Final Results*. IDM at 15. Thus, CFA's argument that Commerce should have compared the export prices, operations, and levels of integration of Bien Dong and the non-examined companies is not only rebutted by the statutory presumption of representativeness by the respondent selection process, it is further outweighed by Commerce's reliance on contemporaneous information for rate-selection.

### 2. Commerce Reasonably Found that Record Evidence Does Not Support "Pulling Forward" a Non-Contemporaneous Rate

CFA argues that the history of dumping by separate rate respondents does not support Commerce's decision to assign a $0.00/kg rate to the non-examined companies. CFA Br. at 17-20. CFA also asserts that the historical context of the order demonstrates that individually examined respondents are not necessarily representative of other participants in this market. *Id.* at 19. Further, CFA critiques Commerce's analysis of the dumping margin from the prior administrative review, arguing that Commerce did not adequately grapple with its argument. *Id.* at 19-20. CFA's arguments are without merit.

CFA abandons a fundamental principle of the statutory framework for separate rate selection; the respondent selection process under 19 U.S.C. § 1677f-1(c)(2) supports the presumption of representativeness based on exporters' volume, not the results of Commerce's dumping margin analysis. *PrimeSource Bldg. Prods.*, 111 F.4th at 1332 (citing *Albemarle*, 821 F.3d at 1353; *Changzhou Hawd Flooring*, 848 F.3d at 1012). As long as using the mandatory respondents' contemporaneous results generates a reasonable margin for "non-selected respondents," Commerce does not have to consider alternatives, including "pulling forward rates from earlier administrative reviews." *Green Farms Seafood Joint Stock Co.*, 2025 WL 1905115,

20

at \*4 (citing *PrimeSource Bldg. Prods., Inc.*, 111 F.4th at 1335) (sustaining Commerce's separate rate calculation not based on the expected method).

CFA argues that the *history* of the order, and the calculation of rates non-contemporaneous with this review, takes priority over contemporaneously calculated margins. CFA Br. at 17-20. As the Federal Circuit explains in *Albemarle Corp.*, "{t}here is no basis to simply assume that the underlying facts or calculated dumping margins remain the same from period to period. '{I}f the facts remained the same from period to period, there would be no need for administrative reviews.'" 821 F.3d at 1356 (citing *Shandong Huarong Mach. Co. v. United States*, 29 CIT 484, 490-91 (2005)); *see also CME Acquisitions, LLC v. United States*, 793 F. Supp. 3d 1375, 1387-88 (Ct. Int'l Trade 2025) ("Because pulling forward rates from past reviews is a departure from the expected method, the party asking for such a method must justify its use with substantial evidence on the record.").

CFA's argument assumes that the underlying facts or dumping margins remain the same from previous reviews to this review. However, no record evidence supports that assumption, which the Federal Circuit has expressly rejected. *See Albemarle*, 821 F.3d at 1356. Thus, Commerce reasonably declines to use non-contemporaneous information when the continued relevance of that non-contemporaneous information is not supported by the record. IDM at 15-16. Indeed, although CFA points to a $0.18/kg rate calculated for CASEAMEX in the prior review, Commerce also calculated a $0.00/kg rate for Vinh Hoan in that same review. *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 89 Fed. Reg. 18,595 (Dep't Commerce Mar. 14, 2024) (final results and partial rescission of admin. review; 2021-2022). Thus, CFA's preference for a rate from a previous review does not provide evidence that rebuts the representativeness of the respondent's contemporaneously calculated rate. IDM at 15; *see*

21

*also Albemarle Corp.*, 821 F.3d at 1357 ("That the prior rates were near in time cannot in and of itself justify their use in a subsequent review."); *Id.* at n.11 ("But the availability of prior information provides no basis for using non-contemporaneous data in each administrative review.").

CFA compares this case to *Bosun Tools*, which analyzed the prior dumping of non-examined companies and a particular exporter. CFA Br. at 17-18 (citing *Bosun Tools Co. v. United States*, Court No. 2021-1929, 2022 U.S. App. LEXIS 624 (Fed. Cir. January 10, 2022)). *Bosun Tools* is nonprecedential and is not binding on this court. *PrimeSource Bldg. Prods*, 111 F.4th at 1331 ("*Bosun* is a nonprecedential opinion which therefore does not control here."). Nonetheless, CFA's reliance is not persuasive. Specifically, *Bosun* presented a scenario in which Commerce used the expected method and averaged a zero rate and a rate based on adverse facts available, and found that a history of the company's rates trending upwards, regardless of whether the company was selected for individual examination, provided substantial evidence for Commerce's selection of a higher separate rate for a particular respondent. *Bosun Tools Co. v. United States*, 2022 U.S. App. LEXIS 624 at *12-15.

Contrary to the facts of *Boson Tools*, the inclusion of a rate based on AFA is not at issue in this case. CFA argues that "an inference of <u>no</u> dumping" is a departure from the rates assigned to separate rate respondents over the life of the Order. CFA Br. at 18-19 (emphasis in original). But as Commerce explains, Commerce has assigned separate rates that are above *de minimis* in the past and Commerce has also calculated zero and *de minimis* rates for mandatory respondents in numerous segments of this proceeding, including the most recently completed review. IDM at 15-16 (citing *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. at 18,596); *see also Certain Frozen Fish Fillets From the Socialist*

22

*Republic of Vietnam*, 87 Fed. Reg. 15,912 (Dep't of Commerce March 21, 2022) (final results admin. review and final determination of no shipments; 2019-2020) (calculating a zero rate for one of the mandatory respondents – NTSF); *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021) (final results admin. review and final determ. of no shipments; 2018-2019) (calculating zero rates for both mandatory respondents – Vinh Hoan and Nam Viet Corporation). CFA's reliance on a calculated $0.18/kg rate in the previous review, *see* CFA Br. at 19, is not applicable when Commerce found no dumping occurred in this review. Thus, CFA's references to the rate for non-examined companies in the previous review is inapposite. The issue is whether the mandatory respondent's rate is representative of dumping during the period of review. Because CFA raises no legal or factual argument about Bien Dong's calculated margin in this review, CFA's argument is misplaced.

Although CFA argues that Commerce erroneously states that CFA provided limited discussion of CASEAMEX and that there is no basis to conclude that Bien Dong's rate is not representative, CFA Br. at 19-20, CFA misstates Commerce's finding. First, Commerce is explaining that CFA did not provide any record evidence about how CASEAMEX's prices, costs, or operations are different, other than its relative coverage of the market and its reporting of no sales through affiliate entities. IDM at 14; *see also* CFA Br. at 6, 8-9. Now CFA asserts that Commerce did not grapple with its argument about CASEAMEX and the calculation of the non-contemporaneous $0.18/kg rate. That is not true. Commerce explains how it disagrees with CFA's argument that its limited factual assertions regarding CASEAMEX do not provide adequate record evidence to support reliance on a non-contemporaneously calculated rate. IDM at 14. Commerce provides a similar factual analysis about the other non-examined companies.

*Id.* at 14-15.  Commerce further explains why it disagrees with CFA's arguments about the representativeness of the previously calculated $0.18/kg rate.  IDM at 15-16.  Thus, contrary to CFA's argument, Commerce did not fail "to consider {} important aspect{s} of the problem…" CFA Br. at 20.

CFA merely disagrees with Commerce's analysis of record evidence.  However, in making these arguments, CFA does not identify any evidence on the record developed for this administrative review.  Because no record evidence demonstrates that pulling forward a past rate would be reasonable, Commerce's reasonable reliance on the record evidence in this review, the representativeness of the mandatory respondent, should be affirmed.

## CONCLUSION

We respectfully request that the Court deny the plaintiff's motion for judgment upon the administrative record and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                                   s/ Collin T. Mathias
K. GARRETT KAYS                          COLLIN T. MATHIAS
Attorney                                          Trial Attorney
U.S. Department of Commerce        United States Department of Justice
Office of the Chief Counsel for Trade   Civil Division
   Enforcement and Compliance       Commercial Litigation Branch
1401 Constitution Avenue, NW        P.O. Box 480

24

**PUBLIC VERSION**

Washington, D.C. 20230                      Ben Franklin Station
Tel: (202) 482-0018                         Washington, D.C. 20044
Email: Kenneth.Kays@trade.gov               Telephone: (202) 307-0315
                                            Email: Collin.T.Mathias@usdoj.gov


April 3, 2026                               Attorneys for Defendant

25

**PUBLIC VERSION**

# <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,911 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Collin T. Mathias</u>
COLLIN T. MATHIAS

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 3rd day of April 2026, I caused the confidential version of the

brief filed by defendant, the United States, to be served electronically via the Department of

Justice's secured electronic file share service JEFS to the following parties:

Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000
WileyTrade@wiley.law

*Counsel for Plaintiffs*
*Catfish Farmers of America, et al.*

ROBERT LEWIS LAFRANKIE, II
**CROWELL & MORING, LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2868
rlafrankie@crowell.com

*Counsel for Can Tho Import Export Seafood*
*Joint Stock Company*

JONATHAN M. FREED
Didie Muller
Kenneth Neal Hammer
MacKensie Ruth Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
(202) 223-3760
jfreed@tradepacificlaw.com

/s/ Collin T. Mathias
COLLIN T. MATHIAS