**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE RICHARD K. EATON, JUDGE**

CATFISH FARMERS OF AMERICA, *et al.,*

                Plaintiffs,

    v.

UNITED STATES,

                Defendant,

    and

CAN THO IMPORT EXPORT SEAFOOD JOINT
STOCK COMPANY,

                Defendant-Intervenor

Court No. 25-00156

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE
AGENCY RECORD**

Robert L. LaFrankie

**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2868
Email: rlafrankie@crowell.com

*Counsel to Can Tho Import Export
Seafood Joint Stock Company*

Dated: April 17, 2026

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

RULE 56.2 STATEMENT ........................................................................................2

STATEMENT OF THE ISSUES PRESENTED........................................................2

STATEMENT OF THE FACTS ................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................3

ARGUMENT ...........................................................................................................4

    I.      Commerce's Determination of the AD Rate for Non-Selected
Respondents was in Accordance with Law ...........................................4

    II.     Commerce's Determination of the AD Rate for Non-selected
Respondents was supported by Substantial Evidence...........................6

CONCLUSION .......................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amanda Foods (Vietnam) Ltd. v. United States*, 837 F. Supp. 2d. 1338 (Court Int'l Trade 2012) ................................................................................9

*Albemarle v. United States,* 821 F.3d 1345 (Fed. Cir. 2016)) ...................................9

*Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354 (Court Int'l Trade 2014) ........................................................... 8-9

**Statutes**

19 U.S.C. § 1673d(c)(5)(B) ....................................................................................5

## INTRODUCTION

Defendant-Intervenor Can Tho Import Export Seafood Joint Stock Company ("CASEAMEX") respectfully submits this response to the Rule 56.2 motion for judgment on the agency record filed by Plaintiffs Catfish Farmers of America, *et al.* ("CFA"), ECF No. 37, ("CFA Br.") challenging the *Final Results* of the administrative review of the antidumping ("AD") duty order on certain frozen fish fillets from Vietnam issued by the U.S. Department of Commerce ("Commerce").

Defendant United States Government ("Defendant USG") has thoroughly rebutted CFA's arguments in its response to CFA's Rule 56.2 motion and supporting legal brief. *See* Def's Opp. to Pl.'s Mot. J. on the Agency Record (April 3, 2026), ECF No. 41 ("Def. Br."). CASEAMEX fully concurs with Defendant USG's rebuttal arguments and adopts them by reference. CASEAMEX therefore will not fully brief all issues, but instead limits its comments to a few additional legal and factual points to assist the Court's understanding of these issues. To avoid repetition, we also do not provide a separate discussion of the facts, which have been adequately summarized by Defendant USG.

1

## RULE 56.2 STATEMENT

The administrative determination under review is Commerce's *Final Results* issued in the administrative review of the AD order on certain frozen fish fillets from Vietnam. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Administrative Review; 2022-2023,* 90 Fed. Reg. 26,004, (Dep't Commerce June 18, 2025) ("*Final Results*") (P.R. 490), and accompanying Issues and Decision Memorandum (June 12, 2025) ("*Final IDM*") (P.R. 488).

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether Commerce properly selected the separate rate for CASEAMEX and all other non-examined companies, and whether its decision is supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF THE FACTS

We concur with the facts set forth in Defendant USG's response brief and hereby incorporate them by reference.

## SUMMARY OF THE ARGUMENT

The Court should affirm Commerce's *Final Results*. Commerce properly determined the separate rate for CASEAMEX and all non-selected respondents based on the calculated rate of Bien Dong, the lone mandatory respondent. Commerce properly applied its discretion to use "any reasonable method" under the statute in this case because all calculated margins were either "zero or *de minimis*." Commerce therefore properly applied the lone calculated rate of zero to CASEAMEX and all non-selected respondents.

Commerce also properly disregarded CFA's alternative request to "pull forward" older rates to apply to CASEAMEX and the non-selected respondents. Commerce properly determined that CFA's factual allegations in support of such a "pull forward" methodology had no support in the record. Commerce's actions were otherwise reasonable because the law evinces a strong preference for using the most "contemporaneous" rates for this purpose, rather than "pulling forward" older AD rates from prior proceedings.

3

## ARGUMENT

### I.  Commerce's Determination of the AD Rate for Non-Selected Respondents was in Accordance with Law.

CFA argues that Commerce unlawfully applied the "expected method" to determine the antidumping ("AD") rate for non-selected respondents such as CASEAMEX.  *See* CFA Br. at 8-12.  Specifically, CFA argues that Commerce's use of the "expected method" was "not feasible in this review as a matter of law" because this methodology requires Commerce to "weight-average" at least two AD margins. *Id.* at 9-10.  CFA asserts, therefore, that Commerce's use of the "expected method" was unlawful "on its face" because there was only a "single individually-examined respondent" in this case. *See id.* at 9-10.  CFA reasons that Commerce's actions were unlawful because "it is not possible to average a single value." *Id.* at 6.

CFA's simplistic arguments lack merit and should be rejected. Defendant USG effectively rebuts each of CFA's arguments.  As Defendant USG aptly points out, Commerce did not actually use the "expected method" in this case as CFA alleges.  *See* Def. Br. at 9-10. Rather, Commerce actually relied upon the alternative "any reasonable method", whereby it used the single rate determined for Bien Dong as

the representative rate applied to all non-selected respondents. *Id.* As Defendant USG correctly points out, Commerce never stated it was using a "weighted-average" to determine the non-selected rates as CFA alleges. *Id.* at 10. Thus, CFA mischaracterizes Commerce's actions.

Contrary to CFA's assertions, Commerce followed the law, which provides Commerce the discretion to use "any reasonable method" to determine the dumping rate for non-selected respondents when the calculated rates for selected respondents are all "zero or *de minimis.*" *See* 19 U.S.C. § 1673d(c)(5)(B). Such was the case here. It is undisputed that the calculated rate for the lone remaining mandatory respondent Bien Dong was zero. *See Final IDM* at 8. Commerce therefore reasonably assigned that zero rate to the non-selected respondents, consistent with the statute and its practice. *See id.* at 16.

Commerce explained that it uses the rates calculated for the mandatory respondents for this purpose based on a "presumption that the dumping margins calculated for mandatory respondent(s) are representative for purposes of assigning a dumping margin to companies not selected for individual examination." *Id.* Commerce found no record evidence to overcome that presumption. *Id.*

As Defendant USG further explains, Commerce's use of Bien Dong's rate for all other exporters was particularly appropriate in this case given that Bien Dong was one of the "largest volume exporters", meaning its rate is "representative of all exporters." *See* Def. Br. at 11. In fact, as Defendant USG notes, Bien Dong accounted for "the highest volume of sales" subject to the review. *Id.* Thus, the use of Bien Dong's rate was particularly representative of the rates for non-selected respondents, as contemplated by the statute. *See id.* at 12-13.

For these reasons, and for all the other reasons noted in Defendant USG's brief, Commerce's actions in basing the non-selected respondents' rates on Bien Dong's rate were in accordance with law.

## II. Commerce's Determination of the AD Rate for Non-selected Respondents was Supported by Substantial Evidence.

CFA also argues that Commerce's use of Bien Dong's rate for the separate rate respondents was unsupported by substantial evidence. *See generally* CFA Br. at 12 -17. CFA alleges that Bien Dong's (and all mandatory respondents') "cost and operational structures differed from those of the non-mandatory respondents" as did its "market share and size." *Id.* at 12-13 and 15. CFA also alleges "significant differences in pricing behavior between Bien Dong and the separate-rate respondents."

6

*Id.* at 13-14.  In short, CFA argues that Bien Dong's rate was not representative of the non-selected respondents for all these reasons, and that Commerce should have instead "pull{ed} forward" an older rate of $0.18 per kg from a prior review. *See id.* at 11.

CFA's evidentiary arguments lack merit.  They also lack support in the record.  Defendant USG again effectively rebuts each of these evidentiary claims. *See generally* Def. USG Br. at 14-23.  We concur with those arguments, and we adopt them by reference.  As Defendant USG correctly notes, "CFA merely disagrees with Commerce's analysis of record evidence." Def. Br. at 24.  Defendant USG also correctly notes that CFA has failed to identify any evidence on the record of this proceeding to demonstrate that "pulling forward a past rate would be reasonable." *Id.* at 24.  Thus, Commerce reasonably relied on the record evidence in finding that Bien Dong's rate was representative of the non-selected respondents' rates. *See id.*

Defendant USG's arguments demonstrate that Commerce reasonably refused to "pull forward" rates from prior reviews to determine the rates of the non-selected respondents. CASEAMEX wishes to make one additional important point.  CFA's proposal for

7

Commerce to "pull forward" older rates is not only unsupported by record evidence (as shown by Defendant USG), but it is also contrary to law.

Indeed, the law evinces a strong preference for using the most contemporaneous rates, rather than "pulling forward" older rates from prior proceedings. This Court has made clear it is more appropriate to look to currently calculated rates for purposes of determining the reasonableness of the separate rates. *See e.g.*, *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1364 (Court Int'l Trade 2014) (noting comparisons of current separate rate to most recent rates calculated for cooperating respondents.). In *Navneet,* the Court noted that the "rates … {in the current proceeding} constitute the only contemporaneous evidence of pricing practices among large exporters of subject merchandise and are presumed to represent respondents as a whole." *See id.*, *citing Amanda Foods (Vietnam) Ltd. v. United States*, 837 F. Supp. 2d. 1338, 1345-46 (Court Int'l Trade 2012).

The Federal Circuit has also held there is a "manifest preference for contemporaneity in periodic administrative reviews"). *See Albemarle v. United States,* 821 F.3d 1345, 1356 (Fed. Cir. 2016).  Indeed, the

Federal Circuit in *Albemarle* suggests that Commerce should seek first to rely on information from the current review period, which provides the most contemporaneous rates possible. *See id*.

Thus, both the statute and Court precedent strongly favor Commerce's use of contemporaneous AD rates of the mandatory respondent Bien Dong to determine AD rates for non-selected respondents such as CASEAMEX.  This is exactly what Commerce did in this case. But CFA largely ignores the statute and the Commerce's discretion in this regard. CFA fails to provide adequate legal or evidentiary justification for its request that Commerce ignore its normal practice, and disregard contemporaneity.  Rather, as pointed out by Defendant USG, CFA manufactured a contrived methodology based on meaningless facts to justify its departure from normal practice. Commerce properly rejected those efforts and its actions in doing so were reasonable.

Thus, for these reasons, the Court should sustain Commerce's rejection of CFA's request that Commerce "pull forward" older AD rates based on its flawed evidentiary analysis.  Commerce reasonably rejected CFA's arguments.

9

## CONCLUSION

For these reasons, we respectfully request that the Court hold that Commerce's decision was supported by substantial evidence and otherwise in accordance with law, and it should sustain Commerce's *Final Results* regarding CASEAMEX.

Respectfully submitted

*/s/ Robert L. LaFrankie*
Robert L. LaFrankie

**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004

*Counsel to Can Tho Import Export Joint Stock Company.*

April 17, 2026

10

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains less than 1,700 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word), and therefore complies with the maximum word count limitation applicable to this brief.

*/s/ Robert L. LaFrankie*
Robert L. LaFrankie

11